**OSBORNE, OHLSON & HALL, CHARTERED**
John Ohlson, Esquire
Nevada Bar No. 1672
Ann O. Hall, Esquire
Nevada Bar No. 5447
555 South Center Street
Reno, Nevada 89501
775-323-8678
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

*****

| | |
|---|---|
| DAVID BARRAGAN; et al., | Case No.: **3:06-CV-00310-VPC** |
| Plaintiffs, | |
| - vs - | PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| ROBIN LANDRY; et al., | |
| Defendants. | |

COME NOW, Plaintiffs above named, by and through their undersigned counsel, and move this Court for its Order for Partial Summary Judgement in favor of Plaintiffs and against Defendants, all as set forth in the Points and Authorities submitted herewith.

This motion is made and based on the Points and Authorities and Exhibits submitted herewith, and all the records, files, and pleadings on file herein.

Dated this ___20th___ day of ___June_____, 2007.

                                                                                      /s/_____
                                                                                      JOHN OHLSON, ESQ.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**
**FACTS**

Abundant Life Academy (hereinafter ALA) was a private Christian residential facility offering guidance counseling and correspondence education facilities to troubled teenagers whose parents had despaired of their behavior. The facility was located at a former bed and breakfast guest ranch known as the Hidden Canyon Ranch in White Pine County Nevada. ALA opened at Hidden Canyon in December, 2004 with approximately 30 students.  ALA was not licensed at the time of its closure, but was nonetheless operating legitimately from a licensing perspective ( see page 31 line15 to page 33 line 25 , deposition of Paula Hawkins, Exhibit "A" hereto).

On or about  April 21-23, 2005 employees of defendants, headed up by defendant Robin Landry, of Child Protective Services (hereinafter CPS), came to White County with a preconceived plan to remove the students from ALA, and take custody of them under the guise that they had been abused or neglected by ALA.  Robin Landry was in charge and was the principal architect of this plan. (see Deposition transcripts attached hereto as Exhibits "B" and "C" and Dobresque Order of August 10, 2007, Exhibit "D"). The defendants removed the children on May 2, 2005 and caused their incarceration in juvenile offender facilities (although none of the children had ever been adjudicated delinquent).

The required (NRS 432B.470) "72 hour" hearing was commenced before Judge Dobresque on May 10, 2005 and subsequently continued to May 31, 2005, where it was fully litigated over 3 days. All parties to this lawsuit were present, represented by counsel, and gave testimony on the subject matter of the propriety of the removal of the children. On August 10, 2005, Judge Dobresque issued his written order and

2

opinion.(Exhibit "D"). No appeal from the Order was ever taken, and its stands as final. This action was filed on April 18, 2006.

## II
## SUMMARY OF JUDGE DOBRESQUE'S ORDER

The Order, Exhibit "D", provides a number of findings and conclusions, which can be summarized as follows:

> 1. The fact that ALA was not certified by the Nevada Board of Education has no relevance on the question of educational neglect, and does not justify the removal of the children to protect them from harm or injury. (page 4, lines 21-26- page 5, line 1)
>
> 2. After CPS completed its interviews with children on May 1, 2005, the unsubstantiated allegations regarding inappropriate sexual contact did not form a basis for removal of the children. (page 5, lines 12-14.)
>
> 3. Reasonable cause did not exist to believe the removal of the boys (at ALA) was required due to inadequate shelter. (page 6, lines 4-7)
>
> 4. A failure to supply clean clothes in the context of the CPS investigation did not justify the removal of the children. ( page 6, lines 16-18).
>
> 5. The actions of defendant Robin Landry were the primary cause of the delay in responding to an ALA student's medical need on May 1, 2005. (page 8, lines 17-21).
>
> 6. There was no reasonable cause to believe immediate removal of the children was required to protect them from harm on or about May 1, 2005 (page 8, lines 22-25).
>
> 7. This case is a situation in which the actions of persons in authority improperly caused the removal of the children. Much of this case was tainted by the questionable decisions, communications, and conduct of the CPS Rural Manager (defendant) Robin Landry. (p. 9, l 18-23 ).
>
> 8. On April 20,2005 (prior to any investigation ) social worker Larry Robb told social worker Tina Slaughter to take all the ALA children into protective custody. This directive came from defendant Robin Landry.(page 11, lines 7-9).

9. On April 23, 2005, ALA removed the boys from its facility. This was not an effort to obstruct defendants' investigation, but rather an attempt to comply with orders given to Craig Rogers by defendants' worker, Larry Robb. (page 12, lines 3-6).

10. Defendant Robin Landry made no efforts to address medical neglect concerns with Dr. Crouch ( a medical doctor), whom she knew was on site 3 days per week. (page 12, lines 15-17)

11.Defendant Robin Landry made no efforts to discuss educational neglect issues with  Guy Gonder (ALA employee) or Willow Bend ( a home study correspondence facility used by ALA ) nor did she speak to any ALA staff about their qualifications as educators. (page 12., lines 18-21)

12. Licensing was an issue, and an important factor in the seizure of the ALA children. (page 12, lines 21-23; page 13, line 1)

13. The decision to close ALA was made prior to any investigation, and once the local investigators were unable to find evidence to support a finding of immediate need to remove , the rural manager ( defendant Robin Landry) took it upon herself to take over the investigation. (page 13, lines 4-9).

This motion addresses the principle of collateral estoppel  and requests that this Court prevent the re-litigation of issues between the parties and rule that the above factual findings and conclusions of Judge Dobresque be established in this case.

### III
### BASIS FOR SUMMARY JUDGMENT

A summary judgment motion should be granted when no genuine issue of material fact exits and the moving party is entitled to judgment as a matter of law. *Felton v. Haris Design & Construction Co.*, 417 F.Supp.2d 17 (2006);  *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); **Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct.**

4

**1348, 89 L.Ed.2d 538 (1986)**.  A genuine issue remains "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson, 477 U.S. at 248, 106 S. Ct. at 2510**.  When considering the motion, the court will view all facts and make all reasonable inferences in the light most favorable to the non-moving party.  **Anderson, 477 U.S. at 255, 106 S.Ct. at** 2513-2514; **Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.)**, cert.denied, **513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994)**; **Miller v Leathers, 913 F.2d 1085 (4th Cir. 1990)**, cert. denied, **498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).**  Mere speculation by the non-moving party cannot stave off a properly supported motion for summary judgment.  See **Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985**).

Additionally, when reviewing a motion for summary judgment "the nonmoving party must produce sufficient evidence in the form of depositions, affidavits or other documentation which 'demonstrate that a triable issue of fact exists.'" **Bryant v. Better Business Bureau of Greater Marilyn**, 923 F.Supp. 720; **Shaw**, 13 *F.3d at 798; see also* **Celotex**, 477 U.S. at 324, 06 S.Ct. at 2553; **Anderson,** 477 U.S. at 252, 106 S. Ct. at 2512.  It is well-established that collateral estoppel may compel a grant of summary judgment as to the factual issues resolved by the earlier judgment. **Cook County v. Lynch, 560 F. Supp. 136 (1982)**.

## IV
## ONE BITE OF THE APPLE

On August 10, 2005, the Court in White Pine County entered its Order following hearings held on May 10, 2005, May 31 , 2005, June 1, 2005, and June 2, 2005.  Present and participating at the hearing were representatives of Abundant Life Academy, represented by Jeffrey J. Kump, Esq., and John Ohlson, Esq.  CPS was

represented by Kevin R. Briggs, Esq., Deputy District Attorney of White Pine County, and the licensing bureau of the Nevada State Division of Child and Family Services, represented by Karen Dickerson, Esq., Deputy Attorney General. "CPS" as described by the Court is Child Protective Services, a section of the Nevada State Division of Child and Family Services, which is an administrative part of the government of the State of Nevada. After both sides' presentation of evidence and testimony, the matter was submitted to the Court for decision. (see generally, Exhibit "B" hereto). On May 10, 2005, the defendant herein, Robin Landry, was the only witness who testified.

The Court made a number of findings (summarized in section II, above ) which resolved  the factual and legal issues before it. The issues all concerned whether or not CPS had reasonable cause to remove the minor students from ALA. The specific allegations of abuse or neglect were as follows:

1. Whether or not "educational neglect" occurred at the ALA campus;

2. Whether inappropriate sexual contact involving a student formed a basis for removing the ALA students from campus;

3. Whether there was reasonable cause to believe the removal of the ALA students was required due to inadequate shelter at the ALA campus;

4. Whether the failure to supply clean clothes justified removal of the children from the ALA campus;

5. Whether a there was reasonable cause to believe that the removal of the ALA students was required due to ALA's neglect of students medical needs;

6. Overall, was there a reasonable cause to believe immediate removal of the ALA students was required to protect the children from harm?

The Court made its specific findings and resolved all these issues in the negative

(see Exhibit "D").

It is apparent from discovery, that the defendant's herein will attempt to relitigate these very same issues. Their hope is to convince the fact finder in this case that agencies of the State were justified in removing the ALA students and effectively shutting down the ALA facility.

It is clear that the August 10, 2005 Order was a ruling on the merits, which ruling is final, as never appealed.

Finally, the parties in this case were parties in the White Pine case (detention hearing), or were in privity with those parties. The students named as plaintiffs in this case are the students named in the caption of the order.  ALA appeared and participated in the detention hearing. The State of Nevada, through its agencies appeared and were represented by counsel, and participated.

It is the re-litigation of these issues which is barred by the doctrine of collateral estoppel (issue preclusion).The doctrine of collateral estoppel, or issue preclusion, is well established in both federal and Nevada State jurisprudence.  The United States Supreme Court set the standards for issue preclusion in the matter of  ***Parklane Hosiery Company, Inc. v. Leo M. Shore***, **439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d,(1979).** The use of issue preclusion is commonly seen in defensive applications. However, it is not unusual to see its application offensively by plaintiffs. The United States Supreme Court explained the difference between offensive and defensive collateral estoppel in ***Parklane***, ***supra* at 649** which found:

> In this context, offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party.  Defensive use occurs when a defendant seeks to prevent a plaintiff

7

>from asserting a claim the plaintiff has previously litigated and lost against another defendant.

The Supreme Court's definition applies precisely in this case. Here plaintiffs seek to apply the doctrine against the State and those privy with it because of its loss in the underlying State Court action. **_Parklane, supra_** was a case in which the plaintiffs alleged that the defendants had issued a false and misleading proxy statement. Plaintiffs pled issue preclusion because the fraud had been previously prosecuted by the SEC. The **_Parklane_** Court had no trouble with the proposition that collateral estoppel may be applied either offensively or defensively, and held :

>This is essentially the approach of *id., §* 88, which recognizes that "the distinct trend if not the clear weight of recent authority is to the effect that there is no intrinsic difference between 'offensive' as distinct from 'defensive' issue preclusion, although a stronger showing that the prior opportunity to litigate was adequate may be required in the former situation that the latter. *Id.,* Reporter's Note, at 99. (at 652)

Finally the court clarified an issue that may be of concern to the Court, but not to the defendants in this case. **_Parklane, supra_** also stands for the proposition that the use of collateral estoppel does not abridge a party's right to a jury trial under the 7th Amendment.

The law of the State of Nevada is equally clear that an issue, once decided, may not again be litigated in subsequent proceedings involving the same parties, or those in privity. **_University of Nevada v. Tarkanian_, 110 Nev. 581, 879 P.2d 1180 (1994**) states:

>Generally, the doctrine of res judicata precludes parties or those in privity with them from relitigating a cause of action or an issue which has been finally determined by a court of competent jurisdiction

The **_Tarkanian_** Court recognized that:

> ... there are two different species of res judicata that might arguable apply here: issue preclusion and claim preclusion.
>   Issue preclusion, or collateral estoppel, may be implicated when one or more of the parties to an earlier suit are involved in subsequent litigation on a different claim. Issues that were determined in the prior litigation arise in the later suit. If the common issue was actually decided and necessary to the judgment in the earlier suit, its relitigation will be precluded.

In order for the court to apply "issue preclusion" collateral estoppel, the court must make the following three determinations:

> (1) the issue decided in prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation. **_Kahn v Morse & Mowbray_, 121 Nev. 464, 117 P.3d 227 (2005)**

The plaintiffs' proper recourse in this case when faced with the re-litigation of issues already decided is this motion. "Issue preclusion, or collateral estoppel, is a proper basis for granting summary judgment." **_LaForge v. State, University System,_ 116 Nev. 415, P.2d 130 (2000).**

Also the application of issue preclusion, collateral estoppel is not barred in this case merely because the 72 hour detention hearing process encompassed causes of action and claims different from those in this case. "Issue preclusion may apply even though the causes of action are substantially different, if the same fact issue is present. **_Clark v. Clark_, 80 Nev. 52, 389 P.2d 69 (1964)**" _Laforge, supra_ at 420.

## V
## CONCLUSIONS.

Since the defendants, either by direct involvement in the underlying case, or by

9

being in privity with the State of Nevada in that case had a full and fair opportunity to litigate in the underlying case; and since that case was finally resolved, the defendants should be bound with Judge Dobresque's decision and precluded from relitigating those issues in this case.  Accordingly, this Court should order as established the facts and conclusions of Judge Dobresque, all as set forth herein.

        Dated this ___20th___ day of _____June_____, 2007.

                                            _____/s/_____
                                            JOHN OHLSON, ESQ.

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I hereby certify that I am an employee of OSBORNE, OHLSON AND HALL, CHTD., and that on this date I personally served at Reno, Nevada, a true copy of the within **MOTION FOR PARTIAL SUMMARY JUDGMENT** fully addressed to:

> Andrea Nichols, Esq.
> Deputy Attorney General
> 5420 Kietzke Lane, Ste. 202
> Reno, Nevada 89511

| | |
|---|---|
| _____ | for mailing by first class mail, postage prepaid |
| _____ | by personal delivery |
| _____ | by telephonic facsimile |
| _____ | by Federal Express or other overnight delivery |
| \_\_X\_\_ | by placing a true copy thereof for collection and delivery by Reno/Carson Messenger Service on this date. |
| \_\_X\_\_ | by electronic filing |

Dated this __20__ day of June, 2007

_____
Janelle Dixon