UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

-000-

DAVID BARRAGAN, et al.,                    Case No. 3:06-CV-N-00310-LRH-VPC

        Plaintiffs,

vs.

ROBIN LANDRY, et al.,

        Defendants.

**OR GINAL**

DEPOSITION OF

PAULA A. HAWKINS

May 16, 2007

Reno, Nevada

SUNSHINE REPORTING SERVICES

(775) 323-3411 * (775) 883-7950

REPORTED BY: DEBORAH MIDDLETON GRECO, CCR #113, RDR,CRR

i
,,~~~

ALBERT R. GARCIA, JR. - 05/14/07

1                BE IT REMEMBERED that on Wednesday, May 16, 2007, at

2                the hour of 1:34 p.m.    of said day,    at the
law offices of

3 OSBORNE, HALL & OHLSON, 555 South Center Street, Reno, Nevada,

4    before me,              DEBORAH MIDDLETON GRECO,   a   n o t a r y
public,                  personally

5          appeared PAULA A.   HAWKINS,   who  was  by  me first duly
sworn and

6        wasexamined   as a    witness in   said
cause.

7 -000

8                PAULA A.  HAWKINS

9   called as a witness,  having been duly sworn,

10                testified as  follows:

11 EXAMINATION

12 BY MR.   OHLSON:

13       Q     Miss Reporter, this is the time and place set by

14 notice and stipulation for the taking of the deposition of

15 Miss Hawkins, who has graciously appeared.

16    Thank you very much.

17    Everybody ready to go?

18                MR. QUINN: Yes, Slr.

19                MR. OHLSON: Mr. Quinn, do you have your cell phone

20    turned off?

21                MR. QUINN: I have the ringer turned down to buzz

22 only, to vibrate only.

23                MR. OHLSON: Are you going to be receiving on this

24 deposition?

25                MR. QUINN: If it rings, I will not answer it.

'==.
\

SUNSHINE REPORTING SERVICES

ALBERT **R**. GARCIA, JR. — 05/14/07

1        A    Correct.

(

2        Q    And the cease and desist order would have said you can

3             apply for a license, and you informed Mr.  R o g e r s  at that time he

4                          could    get    a provisional license,       correct?

5        A    Correct.

6        Q    And it looks to me as though Mr. Rogers came to your

7    office at the first available opportunity to do so?

8        A    Correct.

9        Q    And at that time, you gave him a license application,

10 correct?

11       A    Correct.

12       Q    And you knew that he was informed about the

13    provisional license period?

(

1
4        A    Correct.

15       Q    Okay.  Did you provide Mr. Rogers with any reason to

16 think that he could not continue to operate the ALA facility in

17 the short term between your meeting with him and the application

18 submission?

19       A    I did not.

20       Q    Okay. And In fact, you had no intention of closing

21             the school down when Mr.         Rogers showed up to get the license;  is

22    that right?

23        A     If he, he had a time period in which -

24        Q     Right.

25        A     -- to submit the information to us.

SUNSHINE REPORTING SERVICES

ALBERT R. GARCIA, JR. - 05/14/07

1       If that was not completed within that time period,

2       then we would,   it was    clear to him  that we would close down the

3 facility.

4          Q    Okay. But it was also clear to him that you would not

5    close down the facility on licensing reasons if he got his

6          application   in   in time,          correct?

7       A    Correct.

8          Q    Okay. And because that's what you do?

9       A    Correct.

10         Q    You are not In the business to unfairly limit the

11   institutions or schools or child care facilities that you

12 regulate, are you?

         A    No, **I'm** not.

13

14         Q    In fact, you are there to make sure that there is

15 compliance, correct?

16    A    Correct.

17    Q    And that properly licensable institutions get

18 licensed, correct?

19    A    Correct.

20    Q    And that those that are not properly licensable do

21 not?

22       A    Correct.

23         Q    Okay. At the time that you met with Mr. Rogers in

24       Carson City,  were you possessed of any information that would

25      lead you to believe at that time that ALA was not licensable?

SUNSHINE REPORTING SERVICES

ALBERT **R**. GARCIA, JR. - 05/14/07

1     A     No.    I was aware that there were concerns about the

2 facility.

3          Q     Okay. But nothing that would lead you to believe at

4     that time that they were not licensable?

5          A     All I knew is that at that point in time they were not

6 in compliance with law. They had not been l~censed.

7     They had a time period in which to submit a complete

8 application, which is a fairly lengthy process, and that the 9 child

welfare investigators had concerns about the facility.

10          Q     Okay. All right.

11     None of which led you to believe at that time that

12 Mr. Rogers had no chance of getting a license?

13          A     I did not think that he had no chance of getting a

14 license.

15          Q     All right. So the fact that he remained open during

16 the appropr~ate period pending his license application did not 17 surprise you and didn't seem inappropriate to you?

18     A          Repeat that,  please.

19     Q     As far as you are concerned and your licensing

20 division, the fact that ALA remained open for the next week or 21 so,

that if that was within the period, that that did not give 22 you

concern?

23          A     At the time that I provided him the application, it

24     appeared that he was going through the regular process that any

25      person interested in applying for a license would go through.

SUNSHINE REPORTING SERVICES